NO. 07-10-0228-CV

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL C

 NOVEMBER 23, 2010

 ASSISTED LIVING CONCEPTS, INC., APPELLANT

 v.

 TERESA STARK, AS NEXT FRIEND OF FRED GRABEAL, APPELLEE

 FROM THE 47TH DISTRICT COURT OF POTTER COUNTY;

 NO. 98,015-A; HONORABLE RICHARD DAMBOLD, JUDGE[1]

Before QUINN, C.J., HANCOCK and PIRTLE, JJ.

 MEMORANDUM OPINION

 Appellant, Assisted Living Concepts, Inc., ("ALC"), filed this interlocutory appeal from an
order denying its motion to dismiss the premises liability and breach of contract claims of
Appellee, Teresa Stark, as next friend of Fred Grabeal (Stark), for failing to file an expert report
pursuant to section 74.351 of the Texas Civil Practice and Remedies Code.[2] We affirm in part, and
reverse and render in part.

 Background

 On October 13, 2009, Stark, Fred Grabeal's stepdaughter, filed suit on Grabeal's behalf
against "Potter House, Assisted Living Concepts, Inc.", alleging that he was injured as a result of
negligence and breach of contract. Stark alleged Grabeal was diagnosed with Alzheimers disease in
the spring of 2004 and became a patient at Potter House,[3] an assisted living community, in May
2007. Potter House is not a lock down facility, i.e., the residents are not confined to their
living quarters by locked doors and the doors to the outdoors are not locked so as to prevent the
residents from leaving the premises.[4] Stark further alleged that Grabeal was injured as a result
of being allowed to wander off Potter House's premises on May 17 and 18, 2009. Grabeal was later
found by Amarillo Police Department officers. On November 9, 2009, ALC filed its original
answer.[5]

 For her premises liability and breach of contract causes of action, Stark alleged the
following, in pertinent part:

 FRED A. GRABEAL'S CLAIM FOR NEGLIGENCE

 14. Defendant(s) had a duty to properly supervise Grabeal due to his known propensity to
 wander off since he suffered from Alzheimer's disease and defendant(s) duty to properly
 maintain locks on the premises to prevent Grabeal and others from wandering off the premises
 and being unsupervised.

 15. As a proximate result of the defendant(s) failure to properly supervise Grabeal and to
 properly maintain its premises, as represented to plaintiff as being secure, Grabeal suffered
 injuries and damages as a result of the defendant(s) negligence.

 FRED A. GRABEAL'S CLAIM FOR BREACH OF CONTRACT

 16. Stark contracted on behalf of Grabeal for a (sic) supervision and care in a secure
 location at Potter House.

 On February 22, 2010, ALC filed a motion to dismiss alleging that Stark's claims were health
care liability claims and subject to dismissal because Stark had failed to serve an expert report as
required by section 74.351(a). Stark responded, a hearing was held, and the trial court issued an
order dismissing Stark's "health care liability claims" with prejudice but denying ALC's motion "as
to Plaintiff's claims for premises liability and breach of contract." This appeal followed.

 Discussion

 ALC contends that Stark's premises liability and breach of contract claims are, in fact,
health care liability claims because the claims allege that owner and operator of Potter House
failed to properly supervise or protect Grabeal from harm. As such, ALC contends that Stark's
claims may not be proven without expert testimony regarding Grabeal's medical condition and the
level of supervision he required, i.e., whether the owner and operator of Potter House was under a
duty to secure Grabeal's presence at the assisted living facility. Stark disagrees and asserts that
her claims also include the failure to secure the exterior doors and/or properly maintain
functioning door locks at Potter House.

 Standard of Review

 Appellate courts review a trial court's order decision to either grant or deny a motion to
dismiss for failure to timely file a section 74.351(a) expert report under an abuse of discretion
standard. See Jernigan v. Langley, 195 S.W.3d 91, 93 (Tex. 2006) (per curiam); Jones v. King, 255
S.W.3d 156, 158 (Tex.App.--San Antonio 2008, pet. denied). However, when the issue presented
requires statutory interpretation or a determination whether chapter 74 applies to a claim, the
issue presents a question of law which we review de novo. Fudge v. Wall, 308 S.W.3d 458, 460
(Tex.App.--Dallas 2010, no pet.). Whether Stark's claims for premises liability and breach of
contract are health care liability claims is an issue presenting a question of law. See Dual D.
Healthcare Operations, Inc. v. Kenyon, 291 S.W.3d 486, 489-90 (Tex.App.--Dallas 2009, no pet.); Lee
v. Boothe, 235 S.W.3d 448, 451 (Tex.App.--Dallas 2007, pet. denied).

 Health Care Liability Claim

 The statute defines "health care liability claim" as:

 a cause of action against a health care provider or physician for treatment, lack of treatment,
 or other claimed departure from accepted standards of medical care, or health care, or safety
 or professional or administrative services directly related to health care, which proximately
 results in injury to or death of a claimant, whether the claimant's claim or cause of action
 sounds in tort or contract.

Section 74.001(a)(13).[6]

 To determine whether a cause of action falls under the definition of a health care liability
claim, we examine the underlying nature of the claim. Garland Cmty. Hosp. v. Rose, 156 S.W.3d 541,
543 (Tex. 2004). "[I]t is the gravamen of the claim, not the form of the pleadings, that controls
this determination." Marks v. St. Luke's Episcopal Hospital, 319 S.W.3d 658, 664 (Tex. 2010).
Although we are not bound by the form of the plaintiff's pleading; Diversicare General Partner, Inc.
v. Rubio, 185 S.W.3d 842, 847 (Tex. 2005), a review of Stark's allegations is helpful in evaluating
whether her claims against ALC are health care liability claims recast as premises liability and
breach of contract claims. Fudge, 308 S.W.3d at 462. We consider the alleged wrongful conduct as
well as the duties allegedly breached. Wilson N. Jones Mem'l Hosp. v. Ammons, 266 S.W.3d 51, 57
(Tex.App.--Dallas 2008, pet. filed).

 If the factual allegations are related to medical treatment provided by the defendant and
constitute an inseparable part of the defendant's rendition of medical services, then the
plaintiff's claim is a health care liability claim subject to the requirements of chapter 74.
Marks, 319 S.W.3d at 664; Lee, 235 S.W.3d at 451. Whether the testimony of a medical or health care
professional is necessary may be an important factor in determining whether a cause of action is "an
inseparable part of the rendition of medical or health care services." Diversicare, 185 S.W.3d at
848. Other factors include whether a specialized standard in the health care community applies to
the alleged circumstances, and whether the negligent act involves medical judgment related to a
patient's care or treatment. Marks, 319 S.W.3d at 676.

 The gravamen of Stark’s claim is that the owners and operators of Potter House failed to
supervise Grabeal and permitted him to wander off the premises. Her complaint specifically alleges
that ALC "had a duty to properly supervise Grabeal" and "a duty to properly maintain the locks on
the premises to prevent Grabeal . . . from wandering off the premises . . . unsupervised." Stark
further contends that she contracted for "supervision and care in a secure location." Thus, the
primary focus of Stark's claim is not, as she suggests, whether the locks on Potter House's doors
were properly maintained or defective; but is, instead, whether Grabeal was appropriately supervised
and whether he should have been confined to Potter House's premises or had his mobility restrained.

 In the absence of any duty to keep Grabeal's mobility restrained, ALC could not be held liable
for failing to maintain locks on its outside doors in order to keep Grabeal inside the institution.
Where the patient's known mental and physical condition gives no indication that he or she is likely
to wander, the health care provider has no reason or duty to restrain him or her. Golden Villa
Nursing Home, Inc. v. Smith, 674 S.W.2d 343, 347 (Tex.App.--Houston [14th Dist.] 1984, writ ref'd
n.r.e.).

 Stark's alleged negligence and breach of contract claims also require expert medical testimony
to determine whether Potter House breached a specialized standard of care involving medical
judgment, i.e., whether to restrain Grabeal's mobility or not. See Diversicare, 185 S.W.3d at
849. Prior to a determination whether a patient should be restrained, what restraint is appropriate
and/or what degree of restraint to apply, the health care provider must consider a patient's
physical and mental condition to formulate a standard of care for that individual patient and abide
by that standard. Diversicare, 185 S.W.3d at 850; Golden Villa Nursing Home, Inc., 674 S.W.2d at
347. Such a determination is not within the common knowledge of the general public; Diversicare,
185 S.W.3d at 850; NCED Mental Health, Inc. v. Kidd, 214 S.W.3d 28, 34 (Tex..App.--El Paso 2006, no
pet.), and no general rule can be articulated for this standard because it requires that a
"determination of what constitutes 'reasonable care' be made in each individual case, taking into
consideration the individual patient's known mental and physical condition." Golden Villa Nursing
Home, Inc., 674 S.W.2d at 348. Whether Potter House, an open facility, breached a duty owed to
Grabeal requires expert testimony because that determination involves a medical judgment related to
his then existing mental and physical condition and the appropriateness of his medical care and/or
treatment.

 We conclude Stark's tort and breach of contract claims are based on an alleged breach of a
standard of care applicable to health care providers and inseparable from the rendition of medical
services because they may not be proven without expert testimony regarding Grabeal's medical
condition and the level of supervision required.[7] See Shaw v. BMW Healthcare, Inc., 100 S.W.3d 8,
15 (Tex.App.--Tyler 2002, pet. denied) (citing Gormley v. Stover, 907 S.W.2d 448, 450 (Tex. 1995)).
Appellant's sole issue is sustained.

 Attorney's Fees

 By its prayer, contained within both its original and reply briefs, ALC requests this Court to
remand this cause to the trial court for a determination of attorney's fees to be awarded pursuant
to § 74.351(b)(1). The body of both briefs, however, fails to contain any discussion of this issue.
 Rule 38.1(h) of the Texas Rules of Appellate Procedure requires that the body of Appellant's brief
contain a succinct, clear, and accurate statement of the arguments made in support of any relief
requested. Failure to advance an argument, cite authority, make record references, or otherwise
brief an issue effects a waiver of that issue on appeal. Sunnyside Feedyard v. Metro. Life Ins.
Co., 106 S.W.3d 169, 173 (Tex.App.--Amarillo 2003, no pet.).

 Conclusion

 Accordingly, we affirm that portion of the trial court's order dismissing Stark's "health care
liability claims," we reverse the trial court's prior order as to Stark's remaining claims for
premises liability and breach of contract, we render judgment dismissing all claims against ALC,
with prejudice pursuant to section 74.351(a), (b)(2), and we deny Appellant's request to remand this
cause to the trial court for a determination of attorney's fees to be awarded pursuant to §
74.351(b)(1). All legislatively mandated costs of court are assessed against Appellant.

 Patrick A. Pirtle
 Justice
-----------------------
[1]Sitting by assignment. Tex. Gov't Code Ann. § 75.002(a)(3) (Vernon 2005).

[2]Under Chapter 74 of the Texas Civil Practice and Remedies Code, a health care liability claimant
must serve an expert report on a defendant physician or health care provider within 120 days after
the date the original petition was filed. Tex. Civ. Prac. & Rem. Code Ann. § 74.351(a) (Vernon
Supp. 2010). If such a report is not served, a defendant physician or health care provider may file
a motion to dismiss the claim with prejudice to its refiling. Id. § 74.351(b)(2). If the trial
court's order on the motion to dismiss "denies all or part of the relief sought by the motion," the
movant may file an interlocutory appeal of the trial court's order. Id. § 51.014(a)(9). For
convenience, future citations to the provisions of the Texas Civil Practice and Remedies Code
throughout the remainder of this opinion will be simply as "section ____" or "§ ____."

[3]As used herein, "Potter House" refers to the physical facility where Grabeal resided on May 17,
2009.

[4]Affidavit of Tina Burnworth, Regional Director of Quality and Care Management for Potter House,
attached to Defendant's Reply To Plaintiff's Response To And Brief In Opposition To Defendant's
Motion To Dismiss For Failure To Serve Expert Report.

[5]In part, ALC's original answer contained a verified denial contending that ALC was not liable in
the capacity sued. Although ALC's answer does not aver who or what entity owns and operates Potter
House, later pleadings indicate that Texas ALC Partners II, L.P. both owns and does business as
Potter House. See Brief for Appellant Texas ALC Partners II, L.P. D/B/A Potter House, Cause No. 07-
10-0360-CV.

[6]"Health care" is defined as "any act or treatment performed or furnished, or that should have
been performed or furnished, by any health care provider for, to, or on behalf of a patient during
the patient's medical care, treatment, or confinement." Section 74.001(a)(10).

[7]Regarding the use of restraints and supervision in nursing homes, the Supreme Court in
Diversicare stated as follows:

 [s]ome patients require enhanced supervision and additional staff or physical restraints to
 protect them from injuring themselves and others . . ., while other patients do not require such
 protections. The nature and intensity of care and treatment, including professional supervision,
 monitoring, assessment, quantities and types of medication, and other medical treatment are
 judgments made by professionals trained and experienced in treating and caring for patients and
 the patient populations in their health care facilities.

Diversicare, 185 S.W.3d 849.